UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**RONALD M. HENRY** and
**CATHERINE E. HENRY**,

Debtors.

Case No. **12-60134-11**

## MEMORANDUM of DECISION

At Butte in said District this 1st day of August, 2012.

In the above-captioned Chapter 11 case, after due notice, a hearing was held July 24, 2012, in Billings on the Motion to Modify Stay filed by First Interstate Bank on March 28, 2012, at docket entry no. 26, wherein First Interstate Bank seeks relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2). Debtors filed an objection to First Interstate Bank' Motion on April 11, 2012, and noticed the matter for hearing. The parties agreed to continue the hearing on the motion to modify several times, which constituted a waiver of the time periods of 11 U.S.C. § 362(e). First Interstate Bank was represented at the hearing by attorney John H. Grant of Helena, Montana. Debtors were represented at the hearing by Phillip R. Oliver of Billings, Montana. Cheri McCulley, Rich Bruner and Debtor Ronald M. Henry testified and First Interstate Bank's Exhibits 2, 3, 4, 5, 6, 8, 9, 10, 13, 15, 16 and 17, and Debtors' Exhibits A, B and C were admitted into evidence without objection. At the conclusion of the hearing, the Court took First Interstate Bank's Motion under advisement. After review of the Motion, the record, and applicable law, this matter is ready for decision. For the reasons set forth below, a separate

1

Order will be entered granting First Interstate Bank' Motion to Modify Stay.

This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). First Interstate Bank' Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). First Interstate Bank seeks relief from the stay under § 362(d)(1) for "cause" and under § 362(d)(2) alleging Debtors' lack equity in First Interstate Bank' collateral, consisting of Debtors' home, and that Debtors' home is not necessary to Debtors' effective reorganization. This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS & PROCEDURAL HISTORY

Debtors filed their voluntary Chapter 7 bankruptcy petition on February 2, 2012. The Court converted Debtors' case to a Chapter 11 on May 1, 2012. Debtors list on Schedule A filed February 21, 2012, their home at 48 Meadow Circle, Red Lodge, MT 59068. Debtors assert the value of the home is $1,200,000. Debtors' disclose on Schedule D that the home is subject to a first mortgage in favor of First Interstate Bank in the amount of $397,317.00 and a second mortgage in favor of First Interstate Bank in the amount of $800,000.00.

Rich Bruner, the President of First Interstate Bank in Red Lodge, Montana, testified that he is familiar with Debtors' loans, as referenced above. Bruner testified that the amount owing on the first mortgage as of July 24, 2012, was $416,223.91 and the balance owing on the second mortgage as of July 24, 2012, was $870,354.46. Debtors have not made a payment to First Interstate Bank on the first mortgage since December of 2011, and Debtors have not made a payment to First Interstate Bank since the second mortgage matured on June 1, 2011.

Since at least their petition date, Debtors have not paid the insurance on their home. First Interstate Bank has been and continues paying for the insurance at 90-day intervals. Rich Bruner

did not know whether Debtors have paid their property taxes on the home. First Interstate Bank started foreclosure of Debtors' home and had a sale scheduled for early 2012, but the sale did not take place before Debtors' filed their bankruptcy petition.

First Interstate Bank retained Cheri McCulley ("McCulley"), a certified appraiser who was qualified at the hearing as an expert, to appraise Debtors' home. McCulley described Debtors' home as a higher-end custom property, with various "out buildings," that is very well maintained and in excellent condition.[1] To complete her market analysis, McCulley looked at properties not only in Debtors' market area, but also beyond. McCulley testified that had she looked at only properties in the Red Lodge area, her value of Debtors' home would be substantially less. As McCulley testified, in the past twelve years, only 6 properties have sold in the Red Lodge are for over $1 million and Debtors' home is not located in a million dollar neighborhood. Also, McCulley considered both the sales comparison approach and the cost approach when completing her appraisal, but placed the most emphasis on the sales comparison approach as it best reflects the actions of typical buyers and sellers in the market area. Based upon her analysis, McCulley arrived at a final estimate of value for Debtors' property of $950,100.00. Based upon such value, First Interstate Bank's second position lien interest is not adequately protected.

Debtor Ronald Henry, who describes himself as a real estate developer who holds an inactive real estate license, disputed McCulley's valuation, arguing instead that Debtors' home is worth $1.8 to $2 million. Debtor also testified that the value of Debtors' home could be as low

---

[1] McCulley states in her appraisal that "[t]he subject is atypical to houses in the market area. The subject property is a custom built home with several amenities, not typically found in homes in this market."

as $1.5 million. Debtor's opinion of value was based upon his belief that his shops and garages, consisting of a total of roughly 4,000 square feet and which have sloped floors for drainage, commercial sump pumps, 220 wiring and special doors and ventilation, would cost $150.00 per square foot to rebuild. Debtor also thought it would cost $925,000 to rebuild Debtors' 3,697 square foot home. Debtor testified that the home is vital to Debtors' effective reorganization.

## DISCUSSION

First Interstate Bank's Motion to Modify stay is based upon § 362(d)(1) and (d)(2). Section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".[2] What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the

---

[2] Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section , such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion.  *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

      Section 362(d)(2) provides for the granting of relief from the stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  The burden of proof under subsection (d) on the issue of the debtor's equity in property is on the moving party, First Interstate Bank, and the party opposing such relief has the burden of proof under all other issues.  11 U.S.C. § 362(g).  Therefore First Interstate Bank has the burden of proof on the issue of the Debtors' equity.

      The outcome of First Interstate Bank' Motion is determined by the competing opinions of McCulley and Debtor.  For purposes of valuation, an owner is competent to give his or her opinion on the value of his or her property, most often simply by stating the conclusion without stating a reason.  *See* Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL, 2010 ed. § 701:2; *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Tex.*, 614 F.2d 1056, 1061 (5th Cir. 1980).  While a debtor's estimate of value may be acceptable in certain cases, the Court may give little weight to an opinion if not based upon sufficient facts.  *In re Plummer*, 20 Mont. B.R. 468, 478 (Bankr. D. Mont. 2003); *In re Hungerford*, 19 Mont. B.R. 103, 118-19 (Bankr. D. Mont. 2001).  Debtor provided no testimony regarding the facts upon which he based his value opinion.

      McCulley, in contrast, considered both sold properties and current listings and also

considered the unique aspects of Debtors' property. All matters considered, this Court gives little weight to Debtor's opinion of value. Rather, the Court gives the greatest amount of weight to McCulley's opinion that Debtors' home is worth $950,100.00. First Interstate Bank is owed $1,286,578.37. Based upon the foregoing, Debtors do not have any equity in their home. In addition to having no equity in their home, Debtors do not offer First Interstate Bank any form of adequate protection.

This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*,86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "[2, 3] In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In

> determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

*In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) addressed the issue on a basis of "equity cushion" as adequate protection in holding:

"While the term 'adequate protection' is not defined in the code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Curtis*, 9 B.R. 110, 111-112 (B.Ct.E.D.Penn.1981).

An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the code. *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (*citing In re Mellor*, 734 F.2d 1400).

The Court has already concluded Debtors do not have an equity cushion in their home. Further, Debtors offer no other form of adequate protection. For the reasons discussed above and exercising its broad discretion, the Court finds cause exists to lift the automatic under § 362(d)(1).

Debtors oppose First Interstate Bank's Motion arguing the home is vital to Debtors' successful reorganization. Unfortunately for Debtors, whether property is essential for a debtor's reorganization is a factor under § 362(d)(2), but is not a factor under § 362(d)(1). Therefore, the Court will enter a separate order providing as follows,

IT IS ORDERED that First Interstate Bank' Motion to Modify Stay filed March 28, 2012, at docket entry no. 26, is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit First Interstate Bank to pursue its nonbankruptcy remedies with respect to the following property of the estate:

      Lots 9 Am and 10 Am of Amended Plat of Meadowood at Remington Ranch Subdivision, Plat No. 1620, 15th Am, Carbon County, Montana, according to the official plat thereof on file and of record in the office of the Clerk and Recorder of said County, under Document No. 297520.

      Also known as:

      Lots 9 Am and 10 Am of Amended Plat of MEADOWOOD AT REMINGTON RANCH SUBDIVISION, Plat No. 1620, 15th Amended, Carbon County, Montana, according to the official plat thereof on file and of said County, under Document No. 297520.

      More correctly known as:

      Lots 9 Am and 10 Am of Amended Plat of MEADOWOOD AT REMINGTON RANCH SUBDIVISION, Plat No. 1620, 15th Amended, Carbon County, Montana, according to the official plat thereof on file and of record in the office of the Clerk and Recorder of said County, under Document No. 297520.

      BY THE COURT

      */s/ Ralph B. Kirscher*

      HON. RALPH B. KIRSCHER
      U.S. Bankruptcy Judge
      United States Bankruptcy Court
      District of Montana